Good morning, everyone. The first case on our docket this morning is number 122307, People v. DuPree, Agenda No. 5. Ellen, are you ready? You may proceed. Good morning, Your Honors. Counsel, may I please the Court? Your Honors, this is a robbery case that rests on a very questionable, identification testimony. And yet, trial counsel failed to call Matthew Morrison, the victim of the crime, that actually reported the crime to the police. And you told the police that Torrance DuPree, my client, was not the gunman in this case. Now, the Circuit Court denied Mr. DuPree's post-conviction petition that alleged that counsel was ineffective for not calling this witness. And on appeal, the Court upheld that determination, finding that the fact that Mr. Morrison's affidavit was not attached to the petition rendered it sufficient, despite the fact that Mr. DuPree had attached several police reports as well as handwritten statements from Mr. Morrison, all indicating that my client was not the gunman. Now, this isn't the law and shouldn't be the law. Having this kind of strict affidavit requirement for this type of claim, or any type of post-conviction claim, would be some kind of unneeded and unjustified bright-line rule that would prevent post-conviction petitioners from being able to corroborate their claim that their constitutional rights have been violated. Now, this Court should instead clarify that the proper evaluation of supporting documentation under Rule 122-2, or Section 122-2 of the Post-Conviction Act, should be whether it shows that a petitioner's claim is capable of objective corroboration, and not whether it fits into some kind of rigid category of a certain type of evidence, regardless of its corroborative value. Now, that reasoning, Your Honor, is fully consistent with the plain language of the Act and with this Court's precedent. Now, the plain language of the Act is very broad, as Your Honors are well aware, and specifically does not limit supporting documentation to affidavits. It says, the petition shall have attached thereto affidavits, records, or other evidence supporting its allegations. And this Court has said in Delton that the purpose of Section 122-2 is to show that a petition is capable of objective or independent corroboration, and has said that supporting documentation need only identify with reasonable certainty the sources, character, and availability of helpful evidence. Now, the State recognizes this plain language, as it has to, and doesn't seem to dispute what this Court has said is the purpose of Section 122-2. It nonetheless maintains that an affidavit from a witness is the only supporting documentation that can be attached to a petition when the claim is counseled in effectiveness for not calling that witness. They say that that is the only thing that you can attach that could possibly support that claim. But again, that would undermine what this Court has said is the purpose of the rule at this second stage. Counsel, what about Gastinus and Tompkins that specifically said when a post-conviction petition alleges ineffective assistance of counsel and counsel's failure to call a particular witness, the petition must be supported by affidavit from a potential witness? Yes, Your Honor. I think the context in which this Court made those statements is important. This Court has never had a case like this where there is reliable evidence attached. In Gast, for example, for a number of the claims in that case, similar to this case where the alleged counsel was ineffective for not calling a number of witnesses, there was nothing attached at all. That's fully in line with Collins and other cases from this Court saying that failure to attach anything to a petition renders it fatal. And that ruling doesn't necessarily require an affidavit limitation. And it's our position that based on that context, this Court shouldn't enforce a sort of strict limitation that would completely If we don't agree with your distinguishing features of this case from those cases, we've stated in numerous cases, and here's the quote, when this Court has interpreted a statute, that interpretation is considered as part of the statute unless and until the legislature amends it contrary to that interpretation. So if this Court believes that our interpretation that an affidavit is required when a petition alleges ineffective assistance of counsel for failure to call a particular witness, is that now considered part of the statute? And if so, isn't it the legislature's job rather than ours to amend the statute if it disagrees with us? To be clear, Your Honor, this Court has never held that an affidavit This Court has never held that, has never rather rejected otherwise reliable evidence attached to a petition simply because it is not an affidavit. I'd argue, especially considering sort of the genesis of this language, that this Court actually hasn't, you know, fully, you know, sat down and had a case and interpreted Section 122-2 in this way. This language comes from a 3rd District case from the 1980s that cites two cases, one from this Court, a People v. Stephanie from 1970, that does not in any way, you know, enforce this kind of affidavit limitation. Actually, in that case, it says, emphasizes that, you know, a petition has to have supporting documents. It also cites People v. Towles, which is a 2nd District case, I believe, but also from the 70s, I forget what year. And in that case, the Court specifically emphasized that the petitioner in that case did not attach affidavits, records, or other evidence. And that's, and I think Tompkins is the first case to cite Carmichael. And I don't think, and I could be wrong on that, but I'm not sure Tompkins even cites 122-2. So I don't think it's true to necessarily say that this Court has had a reasoned sort of interpretation of Section 122-2 as specifically incorporating this type of strict affidavit limitation to the exclusion of all any other supporting evidence. Counsel, I'm following up on Justice Thomas' question. The statute actually says the petition shall have attached thereto affidavits, records, or. So shall doesn't mean that you have to have an affidavit. Is that what you're arguing? Yeah, absolutely, Your Honor. It's any one of the three or any combination of the three. And we don't have a case interpreting the statute any differently? Not that I'm aware of, Your Honor. We have cases where the House used this affidavit language. But again, Your Honors, no case from this Court has ever rejected evidence simply because it wasn't an affidavit. They've rejected it. They've rejected a petition because no evidence was attached or because unreliable evidence was attached. For example, in Tompkins. In Tompkins, all we had there was a petition that alleged counsel was infected for not calling certain alibi witnesses. And in that case, the petitioner attached his own affidavit that just listed alibi witnesses. And the Court found that that didn't help show if these witnesses would actually be able to present that information. It's also worth pointing out that in Tompkins, Your Honors, this Court also looked to the recantation of, I think it was a co-defendant or it was an incriminating witness. They looked at a recantation that was written in a handwritten letter and just said nothing about the absence of an affidavit with respect to that issue. The question, however, too, to follow through with that, is if we do reverse the appellate court rejecting its holding for absence of an affidavit, what is the defendant entitled to? I mean, are you looking at a remand to the appellate court for review of the circuit court's dismissal or a remand to the circuit court for a third-stage evidentiary hearing? We're asking for a remand for a third-stage evidentiary hearing, Your Honor. Part of our argument, in addition to Section 122, is that there was a substantial showing of this constitutional violation in this case and that this case should be remanded for a third-stage evidentiary hearing. Is there any indication that Mr. Morrison would be available to testify at an evidentiary hearing or would he testify to? There's certainly an indication as to what he would testify to, Your Honor. As far as whether he's available for an evidentiary hearing, the record doesn't say one way or another. Because there's no affidavit for him. Well, Your Honor, I think what is important to remember that, you know, what this Court specifically said is that all we need to decide at the second stage is whether the documents that are attached to the petition show that the claim is capable of objective corroboration or independent corroboration and that it shows with reasonable certainty, not absolute certainty, that identifies the sources of character and availability of that evidence. And we certainly have an indication of what he would say. We know that Mr. Morrison told the police immediately after he reported the crime to the police, he was a victim of the crime, he told the police immediately after the crime that the gunman was as tall as 6'3", which is significantly taller than my client, looked at a line-up photo that included my client's photo and said that none of these people is the gunman, looked at a second line-up and identified someone who is not my client as the gunman. So I think that that shows, that's an indication of what he would testify to when called or if called at an evidentiary hearing. And to be clear, obviously it would be better if he was called at an evidentiary hearing, Your Honor, but he doesn't have to be called. The Court could potentially determine that issue on the basis of the documentation under Rule 1101, because evidentiary rules don't apply at a postmortem hearing. Just, I think I have to briefly address Enos, too, Your Honors. In that case, we had an unsigned, unsworn, untitled document that was labeled investigation notes that didn't even have a potentially author, that was multiple layers of hearsay. And what's important, I think, to recognize from Tompkins and Enos is that those cases talk about, the reason that they wanted an affidavit in that case is that they say that, well, we don't know whether this attached documentation could show that a witness could have provided helpful evidence. Now, here I think this case is sort of a prime example of showing that something other than an affidavit could be attached to a petition, particularly when you have reliable pre-trial statements that a witness gave to the police in particular, or really to anybody, but to the police, reported by the police, witnessed by the police. I think that more than shows the, that has sufficient initial reliability to suggest that this claim is capable of corroboration. So the reliability aspect comes from the fact it was given to the police? I think the reliability aspect, well, there's lots of things that could go into reliability, Your Honors. But I think the fact that this was given to the police, and that the police witnessed these statements, and that Mr. Morrison himself signed some of these handwritten statements, and the statements appear in police reports, certainly shows that this claim is not coming out of thin air. It's not making this up. He's not suggesting, when he alleged in his petition that Mr. Morrison was the person that reported the crime to the police and made all these exculpatory statements about my client, that there's a basis for that in reality. I think that's kind of the point of the second stage, to make sure that we can get to an evidentiary hearing. We can hash out the truth and the facts of these things at that time. But right now, we're at the second stage, pleading stage. This Court has held that at the second stage, we need to assume the truth of the petition, the petition's supporting documentation, and to be viewed in the light, not the light most favorable, in the, construed liberally in my client's favor. So I think with that standard in mind, Your Honors, certainly here, what we're advocating for is just that this Court should just apply help, which is capable of objective corroboration, rather than some kind of strict and arbitrary affidavit rule that would, sort of cuts off the analysis as to the type of evidence that's attached, rather than to actually looking at the evidence and seeing whether it corroborates the claim. Now, in this case, as I was saying, this documentation certainly shows that the claim is capable of objective corroboration. Here, Mr. Dupree's petition alleged that Mr. Morrison was the person who reported the crime. It alleged that he described the young man as being as tall as six foot three, and that he made these exculpatory line-up statements. And all those statements are exactly corroborated in the police reports and in the handwritten statements that Mr. Morrison gave to the police. Now, they certainly show the source's character and availability of that evidence with reasonable certainty. Sources are Morrison, the police officers, and maybe even the documents themselves, because they were handwritten statements given to the police in police reports. The character of the evidence is exculpatory statements, specifically saying that my client was not the gunman, describing the person as being too tall to be my client. And it shows the availability with reasonable certainty. This was a witness who was known to the police. He went to the police multiple times, helped try to identify this person, and the police had his information, sought him out. So I think that when you have a case where someone gave pretrial statements to the police, or some other kind of suspicion that relied on a pretrial statement, that that should be enough to get past the second stage, unless there's something very clear in the record demonstrating that this person wouldn't have testified. I don't think there should be some kind of presumption that a witness wouldn't testify, which would go against what this court has held as the second stage standard, which is construed in the petitioner's favor. Now, if there are any more questions about Section 122-2, I'd like to briefly address the substantial showing issue. Thank you, Your Honors. Your Honors, as I said, this case boils down to two very weak identification witnesses. The state appellate prosecutor below even agreed that these witnesses' testimonies were less than certain and naturally suspect. Mr. Kiernan Collins, the first identification witness, didn't even identify my client in court. He identified my client in a photo array to the police but then testified at trial that he didn't actually identify my client as the gunman but as someone who most resembled the gunman out of the pictures that he was shown and testified that he was only 70% sure of that identification. Mr. Collins also said that he was confident that the gunman was over 6 feet tall and as tall as 6 foot 2. And again, Your Honors, my client is 5 foot 7 or 5 foot 8. Mr. Noel, the second witness, the evidence in this case shows that he was actually an accomplice in this crime, not a victim as he portrayed himself. And the police officers that testified even agreed that they believed that he was involved in the crime. He actually pled guilty to his conduct in this offense in exchange for a deal for probation, in exchange for identifying my client in court. He testified that he knew that if he didn't testify consistently with identifying my client in court that there's a chance that these charges would probably be brought back on him. He also made it clear that, both he and Detective Cooper, also made it clear that Dupree was the only name that the police were going to accept. And Mr. Noel said as the interrogation went on, he knew that Mr. Cooper would only accept Mr. Dupree's name. Mr. Cooper admitted, it was very candid, and admitted that he only, admitted that he, when Mr. Noel asked for an attorney in this case, Mr. Cooper admitted that he, instead of ending the interrogation, that he continued the interrogation, that he basically threatened him with jail time, showed him a list of the charges, told him how much his bond was going to be, and then promised him, not promised him, but insinuated that they could help him get leniency with the State's Attorney's Office by saying, but if you make an identification, we're going to get leniency, we're going to go to bat with the State's Attorney's Office. It was only at that point did Mr. Morrison, I'm sorry, did Mr. Noel make an identification of my client. How do you respond to the State's argument that the defense counsel made a strategic decision not to call, calling out the type of testimony he would have offered, and the fact that the State did fail to call, did fail to call Morrison? So, yeah, the State points out the fact that, in closing arguments, the defense counsel made a comment that the State didn't call Morrison to testify. I guess asking the jury to draw some kind of inference that he might have had some kind of helpful testimony to give, or maybe some testimony that was bad for the State, but that they didn't call him. Even if this was part of counsel's strategy, it was certainly an absolutely unreasonable strategy. The idea that it would be reasonable for an attorney to ask the jury to draw some kind of inference when he could have just given the actual testimony in this case. There's no indication in this record that Morrison would have refused to testify or wouldn't have been able to testify, and even if he did, there are other evidentiary ways of getting in that evidence. It's important to point out that, you know, if Morrison takes the stand in this case, that the State doesn't dispute that all these exculpatory statements are getting in as statements of identification, either for Morrison or the police or maybe even the documents themselves. So the idea that it was reasonable for counsel to ask the jury to draw its inference rather than just have Morrison get on the stand and testify that, yes, I was the person who recorded the crime to the police. I saw the robbery. He robbed me, and it wasn't Mr. Dupree. Or just that, yeah, I told the police immediately after the crime that it wasn't Mr. Dupree. I don't think that was a reasonable strategy if it was even a strategic decision at all. Do we have to take a look at the fact, going back to questions earlier about the at least possibility that Morrison would take the fifth, presumably because he was selling marijuana, right, at the time of the robbery? As a result of that, based on Chief Justice Carmeier's question, I mean, the fact that maybe that was... Do we look at it as if that might be the only trial strategy open to defendant's counsel here? I don't think it's true that it was the only trial strategy open to defense counsel here. I'm saying specifically with respect to whether to call Morrison or not. Right. First of all, Your Honor, I think, again, we're at the second stage, capable of objective corroboration, identified the availability of this witness with reasonable certainty. And the fact that... I think it's worth pointing out that Mr. Morrison... Well, let me just put it this way. Can we take that into account in determining whether it was a reasonable trial strategy by defense counsel? Sure, Your Honor. Yeah, anything that counsel had in his knowledge at the time, I'm sure you could take into account. But I think that it's important to emphasize here that that's a fact question for... Whether Mr. Morrison-Wooder would not have pled the fifth because he was selling marijuana at the time he was robbed is a fact question for an evidentiary hearing. If anything, the facts of this case show that he would not have refused to take the stand. He already went to the... He went to the police himself. He's the one who was supposedly committing this marijuana crime. He went to the police himself to report the crime. There's no indication that he wanted this person to be found. He went to the police three separate times and gave three separate statements. He looked at lineups. He cooperated. So, if anything, I think that it shows that he would have taken the stand. But to the sense that there's a fact question that maybe he would or maybe he wouldn't have, it's a question for an evidentiary hearing. I also think it's worth pointing out that there are serious questions that might better be left for an evidentiary hearing as to whether he would have been even allowed to take the Fifth Amendment. In this case, you can only take the Fifth Amendment if you're going to incriminate yourself. And here, Mr. Cooper testified... The detective testified that noble marijuana was recovered from the scene. And so, even if... And the fact that he testified maybe three months or several months later after this offense happened, I don't think it would even provide probable cause for the police to suggest that maybe he was committing other marijuana crimes at that time. In addition, Your Honors, I'd like to point out that even if he did plead the Fifth and was allowed to, there's evidentiary rules under which his statements could get in. His statements might get in as a statement against interest under Rule 804 of this Court, or under Chambers, which suggests that the history rule can't be mechanically applied to constitutional rights, or particularly the right to present a defense. Your time has expired. Oh, I'm sorry, Your Honors. Thank you. You'll have another chance. Good morning, Your Honors. Counsel may please report. I'm Assistant Attorney General Brian McLeish on behalf of the people. So, even defendant recognized that we have to add something to the statute. So the statute requires affidavits, records, or other evidence. Defendant suggests a reasonable certainty rule, or there are actually several possible standards thrown about that would be resolved on a case-by-case basis, which this Court has actually used in other contexts. So what this Court has done in this context, where there's an allegation of ineffective assistance of counsel for failure to call a witness, is require an affidavit. That is the law. That is what this Court has said repeatedly. The appellate court has said the Supreme Court was unambiguous about requiring this affidavit. Counsel, it doesn't say that in the statute. No, and it doesn't say reliability in the statute either, Your Honor. So I think we all agree that there has to be something more than just evidence, or other evidence. There has to be something built onto that. This Court has held that the evidence has to be reliable, has to prove a reasonable certainty, various criteria. But in this context, this Court has repeatedly held that it has to be an affidavit. And the appellate court has noted that even the Seventh Circuit case that counsel relied upon in his reply brief noted that this is the law in Illinois. And it upheld the procedural default based on the failure to supply an affidavit. It overcame that default by finding that the petitioner in that case had shown actual innocence. But it upheld the default based on Illinois' law that in this case you have to supply an affidavit. Do you agree that the word or says the opposite? I disagree that it says the opposite. So I would frame it as the statute supplies the baseline. These are things that the defendant must, you know, it must do one of these things, yes, Your Honor. And then this Court in various contexts has built on that and applied that rule to the context of the given case. So in every case where there has been an allegation of ineffective assistance of counsel for failure to call a witness, this Court has held there must be an affidavit. And that does not contradict the plain language of the rule. It builds upon the plain language of the rule. Just as when this Court holds that the evidence must prove with a reasonable certainty that the allegations can be objectively corroborated, that builds upon the language of the rule. So either way we're building upon the language of the rule. And this Court has consistently done so by requiring an affidavit in this context. So we're choosing between this standard or a bright-line rule. And the bright-line rule is better here for a couple of reasons. One is it's easier for the courts to decide, you know, instead of saying, well, is this enough like an affidavit, you know, this letter that was contemporaneous, is that enough like an affidavit? But that's typical. But another reason it's better is because a defendant has a choice here. So if a defendant can't get the affidavit, he can explain why, in his post-inviction petition, he hasn't been able to supply an affidavit. So especially at the first stage, a defendant, you know, if applying the defendant's rule here, a defendant may supply, you know, some other evidence, thinking, well, that's going to be enough, when in fact it's not, and the Court will decide that it's not and will forego the opportunity to explain why he hasn't attached an affidavit. Under our bright-line rule, a defendant will know, if you don't have an affidavit, you better explain why, and then proceedings could advance to the second stage where he can get counsel, and counsel can then obtain an affidavit if it's possible. It's also useful to note that in this case, this claim was not included in the pro se petition. Only in the second stage, when the defendant had counsel, was this claim added, and counsel has a higher burden to go get that affidavit. That's, you know, this Court held in People v. Allen that an unnotarized affidavit, quote, affidavit, at the first stage might be enough, because then on the second stage, when the defendant has counsel, counsel can get the proper affidavit. And here we have a second stage petition. Counsel apparently did not get the affidavit, couldn't get the affidavit, we don't know, and this Court should apply the affidavit rule. And then I want to turn to the substantive claim, but remembering that we don't know what Morrison would have testified. We do know that if he testified, this evidence of the other statements would have come in. So the evidence, you know, the police statements. And yeah, Morrison made three statements to police, and the reason he made three statements to police is because he was lying the whole time. He kept changing his story. So, you know, first he was out of the car when the robbery occurred, no mention of marijuana. Then he was in the car, yeah, there was some marijuana involved. He's changing his story. He's a wild card. You know, we have to evaluate counsel's strategic decision. You know, on the one hand, counsel can use the absence of Morrison's testimony against the state in the way that counsel did, and it wasn't just one comment during the closing argument. He made, I believe, four comments, and this is on pages four to five of the brief. You know, the state hasn't called Morrison. We're not going to hear from Morrison today. You know, it's so important that they'll all testify for the state because we're not going to hear from Morrison. Counsel knew what he was doing. He made a strategic decision, and given that we don't know whether Morrison would have taken the stand and said, you know what, actually the defendant kind of looks like the gunman. And, you know, when the gunman came into the car, he was leaning into the car, pointing a gun at my face. So, you know, I wasn't actually very able to tell his height precisely. So Morrison getting on the stand and talking about why he identified the gunman as being over six foot or six foot three might not have been in the defendant's best interest. So we don't know what Morrison would have testified. We also don't, as it came up in the opening argument, we don't know whether Morrison would have testified. Can we assess, other than what you're saying here, the strategic decision by counsel, can we assess that at the second stage based just on the pleadings? Yes, it's a lower standard. I mean, the defendant has to meet a lower standard, but we still can decide whether there was a strategic decision, which the record supports that there was a strategic decision based on counsel's closing arguments alone and the fact that he got in the height evidence through the officer, the technician, who testified that Morrison reported the defendant's height. So counsel knew what Morrison had told the police, and counsel used it. So we know that it was a strategic decision, and we can evaluate whether petitioner has shown enough about whether that was a reasonable strategic decision. And we have to do that in light of the fact that we have no idea of what Morrison would have sat on the stand and testified to. We do know that, again, we do know that counsel could have gotten in these other records if Morrison testified. But otherwise, we can still evaluate that claim. Mr. McLeish, you are relying on Ennis for the bright line rule, right? And Guest and Tompkins, correct. Because in Ennis, even though there was no affidavit, the court went on to evaluate with other or, other evidence, and felt the other evidence wasn't sufficient. And then in Guest and Tompkins... So maybe really there is no bright line rule because the court did evaluate the or in the statute, other evidence. First, the court said you need an affidavit, and then it said in the alternative, consider that. But in Guest and Tompkins, again, it reiterated that you need an affidavit in these cases. But it's not a bright line rule because the court went on to, in Ennis, it wasn't a bright line rule because the court went on to evaluate the other evidence. Sure. And didn't feel it was sufficient. There's no indication... Isn't that on a case-by-case basis that the court would actually evaluate the evidence, other evidence, even though there was no affidavit? And what if there was sufficient evidence, like perhaps in this case? Then it wouldn't be, the outcome would be totally different. So I think there's two parts to that. So one, in Guest and Tompkins, there's no, you know, there's no... The court did not apply these other fuzzy standards that defendants proposed. Fuzzy standards? Case-by-case standards, my apologies. Which are sometimes appropriate and sometimes not. Fuzzy standards, case-by-case standards, sometimes appropriate, sometimes not. However, this court has repeatedly held that you need an affidavit in this context. Or other evidence. No. The court has not held that in these cases. And the Appellate Court has noted that, the Seventh Circuit has noted that that's the law in Illinois. Now, it is up to this court whether it wants to abandon that rule or create an exception. And this case is not the case for creating an exception. Because we don't know how Morrison actually would have testified. In fact, even the post-conviction petition didn't allege that Morrison wouldn't have identified Petitioner as the gunman. It wasn't, there was no allegation in the petition about how Morrison would have testified. Petition, which again, this is counseled petition, just alleged, you know, Morrison told the police X, Y, and Z, counsel was ineffective for not calling Morrison. The end. And without knowing whether Morrison would have testified, whether Morrison was available to testify, because a person who elects to plead the fifth is not available to testify. Wouldn't a hearing flush that out? Yes, and a hearing would flush it out in every case. So we could abandon the affidavit requirement. So, yes, a hearing would flush it out in every case, assuming that Morrison is even available to testify now and wouldn't plead the fifth now. But that's certainly not the rule. So we know we're adding, so we have this statutory requirement. We know we're adding either these standards, these reasonable probability, or these reasonable certainty standards in some contexts. We know that in some cases record evidence might be the best evidence. So if the claim is ineffective assistance of counsel for failure to object to hearsay testimony, we don't need an affidavit. We know that record evidence is going to be the best evidence. If the allegation is a Brady violation, record evidence or an affidavit is probably not going to be very useful. We need other evidence. So the statute recognizes those possibilities, and this court has in particular cases, you know, in certain contexts, held, you know, this is what you need in this kind of case. And in situations where a defendant alleges ineffective assistance for failure to call a witness, this court has held you need an affidavit. And this is not the case to change that rule. I would also like to just touch on some of the evidence. So we have Noel who was very likely an accomplice in this crime and was, you know, his testimony reflected a, you know, he was trying to avoid culpability. We have Collins who identified the defendant with 70% certainty. Counsel made a reasonable strategic decision not to call this wild card Morrison who didn't know whether he was going to get up on the stand and identify the defendant or get up on the stand and say, I have no idea who that person is. I've never seen him before in my life. You know, he had reason to do that and rely on the other evidence from Morrison that he could get in. And there's some other evidence that the defendant committed this crime. Namely, he called someone while he was in jail and asked, you know, he wanted Noel's head on a platter, Noel being the accomplice who, you know, was going to testify against him. And he tried to contact Collins, the other victim. So another reason why if Morrison had any opportunity not to testify, there's strong reason to believe he wouldn't want to testify against someone who had, you know, called for one of the potential witnesses' head on a platter and tried to contact another witness. So if the court has no further questions, we ask that you affirm the judgment of the appellate court. Thank you. Rebuttal. Counsel, I want to go back to my first question that I asked you. And I don't think there's any dispute here between you or opposing counsel that an affidavit is not required to support every type of post-conviction claim that there is. But here are three quotes from the three cases we're talking about. Guest, must introduce affidavits from those individuals who would have testified. Enos, to support a claim for failure to investigate and call witnesses, a defendant must introduce affidavits from those individuals who would have testified. Tompkins, a claim the trial, these are all quotes, a claim the trial counsel failed to investigate and call a witness must be supported by an affidavit from the proposed witness. That's Tompkins. Those three statements are made. Do you believe that those statements would be clear to the legislature that as this court was interpreting the statute, we thought in those cases, I mean, it doesn't seem like at least those quotes can be misinterpreted, then it would be up to the legislature if they decided that we got it wrong with respect to when you have a witness that you're trying to put forth in your post-conviction petition, an affidavit is required. And if so, wouldn't it be up to the legislature to determine whether they wanted to do something with the statute? With respect to that particular kind of post-conviction claim? Absolutely. Well, I think, Your Honors, that, you know, first of all, the legislature intentionally made the language broad, and I understand Your Honor's point, but I think it's important to, again, emphasize that in the context this court made those statements. This court certainly made those statements if you don't dispute those quotations, but, for example, in Guest, they said we need to have an affidavit, but that wasn't made in the context of having other reliable supporting documentation. This court has never rejected otherwise reliable supporting documentation just because it's not an affidavit. This court has only ever held that, only ever made this affidavit comment, or holding even, in cases where no evidence was attached or the evidence that was attached was unreliable, which is the Delton standard. And I think that the idea that this is some kind of, you know, complicated, unworkable standard, I don't think that really makes any sense, Your Honors. I think it's, I mean, this court has set forth that standard that, you know, supporting documentation needs to be, you know, needs to show, identify with reasonable certainty the source, character, and availability of evidence. And I think that the idea that we should have some kind of strict affidavit rule, ignoring whether supporting documentation can actually corroborate the claim, you know, Your Honor, there may be situations, and maybe lots of situations, in which an affidavit from a witness is the absolute only thing that can support a claim, but it should be determined on a case-by-case basis. For example, Your Honors, in a case where the first time the person has any, this witness, hypothetical witness, has any helpful statement to give, the first time they do it is after the trial, after the trial's already happened. In that case, you might need to have an affidavit that says that, yes, it would have testified, or something like that. Because that's the only way to show, it's the only dish that they would have given that testimony at trial. But direct testimony isn't necessarily the only evidence that you can present at trial, Your Honors. You can elicit, you can elicit hearsay evidence under certain evidentiary rules. And this case is a perfect example. In this case, Mr. Morrison takes the stand. The state doesn't dispute that his prior statements of identification get in. So even if he was not willing to testify, and again, the record doesn't really show that one way or the other. But even if he was not willing to testify, he could have been subpoenaed to trial. He could have gotten on the stand and said, either testified consistently with his prior statements, said, I don't remember, or testified inconsistently with those statements. And all that, those prior statements of identification are getting in either through him, or through the police officers, or as prior statements, prior inconsistent statements, maybe even as recorded recollections through the documents themselves. So he's sort of the, he's more of like the vehicle for this helpful evidence, even if you can't necessarily, you know, know for sure that he would give certain testimony. But again, Your Honor, we, there's no indication that he wouldn't. I think it's perfectly reasonable, especially at the second stage, to say that if a witness went to the police, made certain statements to the police, that if we were to call that person to testify, you know with reasonable certainty, I think, that they would give those same statements. And the idea that the state keeps arguing that, you know, we need to, it suggests that an affidavit is sort of like the best evidence, and that all other evidence would be sort of subordinate to that. But there's no hierarchy. We don't need to have an explanation. If you provide sufficient supporting documentation, records, or other evidence, you don't need to explain why you don't have an affidavit. You fulfill the statute's goal. In addition, Your Honors, the idea that Morrison wasn't called because he was lying, I don't think that makes any sense. I think it's very clear from the three different statements that he was just trying to initially hide the fact that he was selling marijuana. It doesn't make sense to me to say that he's the person who reported the crime against himself, and he went to the police to somehow lie about who this person was. And, yes, as far as the fact that Mr. Knoll said something about wanting the person who was going to identify him in court, that he wanted his head on a platter, I think that just shows that he was frustrated that someone was going to identify him in court, which would be true whether he did or didn't commit this crime. I'd also like to reiterate Your Honor's point from Enos, and also point out that in two other uncalled witnesses in that case, the court also went on to, actually for every uncalled witness in that case, the court went on to address whether or not supporting documentation was attached, and then went on to address the merits of it. In fact, for two of those witnesses, Jackson and Norville, in the Enos case, those witnesses did not have affidavits. And this court looked to other transcripts. It looked to police reports. It noted this affidavit rule, but also went on to address the merits of them on the basis of the documents that were attached. And, again, as I'll reiterate, in Tompkins, this court, for some reason, there was an affidavit from the petitioner identifying other alibi witnesses, but there was also an issue as to the failure to call a woman to recant her testimony, and that was based solely on her handwritten letter given to, I'm sorry, I don't know who it was given to exactly, but it was based solely on a handwritten letter, and this court had no discussion of whether they couldn't consider it. They went right into the merits of it. So the idea that there's some kind of well-constructed rule in Illinois indicating that there's this very strict affidavit requirement, I think is kind of belied by sort of the genesis of how this language came about and belied by the language of the statute. A few more things, Your Honor. I'd like to emphasize again that the idea that we don't know how Mr. Morrison would have testified is something that counsel pointed out, and I think that at this stage where you presume the truth of the petition, you can strew it liberally in my client's favor, and we know that he gave helpful exculpatory prior statements to the police, I think we can identify with reasonable certainty that he would have given those statements, and there's nothing in the record otherwise. The idea that we should speculate as to all the ways that he might not have testified I think goes completely against what this court has said is that second-stage standard and also ignores the idea that you can introduce helpful evidence through even unwilling witnesses. So unless there are any further questions, Your Honors. Seeing none. Thank you, Your Honors. With respect to the request that this court reject the idea that there's an affidavit limitation, apply the Delta standard to the section 122-2 and find that there's a substantial showing of a constitutional violation in this case. Thank you. Thank you. Case number 122-307, People v. Dupree, will be taken under advisement as agenda number 7. Excuse me, agenda number 5. Mr. Gehrke, Mr. McLeish, we thank you for your arguments this morning. You are excused for their thanks.